Filed 6/29/15  Certified for publication 7/21/15 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re CHRISTIAN H., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>CHRISTIAN H.,<br><br>        Defendant and Appellant. | A141758<br><br>(City & County of San Francisco Super. Ct. No. JW14-6068) |

Christian H. appeals a dispositional order placing him on probation and ordering him to reside with his mother in Honduras. We agree with Christian that the court abused its discretion in finding that returning to Honduras was not in his best interests for the purpose of petitioning for relief from deportation under 8 United States Code section 1101 as a special immigrant juvenile (SIJ), but that returning to Honduras was in his best interests for the purpose of selecting a disposition. Accordingly, we will reverse the dispositional order.

**Factual and Procedural Background**

On March 13, 2014, Christian was arrested for selling cocaine base. The following day, a wardship petition (Welf. & Inst. Code, § 602, subd. (a)) was filed alleging that Christian, aged 16, sold cocaine base (Health & Saf. Code, § 11352, subd. (a)). The probation department requested his detention pending a hearing based on the charges, the

1

need to protect the minor, and concerns that the minor was likely to flee in order to avoid the court's jurisdiction. The probation officer stated that immigration officials had been notified of Christian's custody status. On March 17, 2014, the juvenile court ordered that Christian be detained pending pretrial.

On March 19, 2014, an "Immigration Detainer – Notice of Action" was faxed to the juvenile hall from the Department of Homeland Security (DHS) stating that Christian had a prior felony conviction or had been charged with a felony offense, that he had illegally re-entered the country after a previous removal, and that the immigration officer had obtained an order of deportation or removal. The detainer requested that juvenile hall maintain custody of the minor for a period not to exceed 48 hours beyond the time when he would otherwise be released to allow DHS to take custody of him. Attached to the detainer was a "Warrant of Removal/Deportation," dated September 21, 2012, stating that Christian was subject to removal or deportation based on a final order by an immigration judge.

On April 8, 2014, the petition was amended to allege that Christian possessed a controlled substance. On the same day, Christian admitted that he had possessed a controlled substance as alleged in the amended petition. In the course of taking his plea, the juvenile court stated, "If you are not a citizen, your plea of guilty may result in your deportation, exclusion from admission or denial of naturalization as a citizen. Do you understand?" Christian stated he understood. Christian's counsel also indicated that she had discussed the matter with Christian and she was satisfied he understood the immigration consequences of his admission.

The probation officer prepared a report in advance of the dispositional hearing. According to the probation officer, Christian stated he had traveled from Honduras to the United States 10 months earlier without his mother's permission. After arriving in Oakland, he had been earning $400 a week. He sent some of the money home and used the rest to pay for rent, food, and clothing. Christian told the probation officer he had completed the fourth grade in Honduras, but for financial reasons could not continue his education. He said he had frequently smoked marijuana while in Honduras. He denied

2

any other drug use. The probation officer reported that he had spoken with Christian's mother, who "was not forthcoming and provided very limited family history." She confirmed that appellant had grown up in the family home in Honduras, that the family was very poor, and that they could not afford to send Christian to school. She wanted Christian to remain in the United States so that he would have the opportunity for a better life. She said Christian had never been in any trouble before.

The disposition report continued, "The Undersigned asked the minor and his mother if he had ever been in trouble with the law and they said no. However, ICE [Immigration, Customs and Enforcement ] Officials reported to the Undersigned and faxed a copy of the ICE detainer on 3/20/14 and a Department of Homeland Security Removal/Deportation Warrant dated 9/21/12. On 3/15/12, the minor was arrested by US Border Patrol in Tucson, Arizona. On 3/26/12, ICE transported and placed the minor in a shelter/group home in Chicago, Illinois. On 6/17/12, the minor AWOL'd from the shelter and without permission from ICE authorities. On 9/12/12, Denver, Co police arrested the minor for drug possession. On 9/22/12, ICE took custody of the minor and transported the minor to Houston, Texas for deportation hearings. On 11/8/12, the minor was Deported back to his home country of Honduras via American Airlines."

The probation department recommended that "the court order the minor be released to the custody of the Immigration, Customs and Enforcement Agency. Based on his prior involvement with the Department of Homeland Security, ICE has federal jurisdiction over the minor. The minor has violated federal law by re-entering the United States without proper documentation or authorization. The Department of Homeland Security has the ability and authority to transport, place and reunite the minor with family." The probation officer believed Christian would abscond if released, that he would not benefit from any services offered, and that it was in his best interest to be reunited with his family in Honduras.

On April 28, 2014, Christian's counsel filed an alternative disposition memorandum requesting that he be removed from the custody of his parents and placed

in an out-of-home placement. On the same date, counsel filed a memorandum arguing that Christian was eligible for SIJ status.[1]

At the contested dispositional hearing on April 30, 2014, the court placed Christian on probation under the supervision of the probation department and ordered him to reside with his mother. After noting that Christian had 49 days credit, the court ordered Christian "to serve 51 days. His term at juvenile hall will end this coming Friday, May 2nd. At that point he may be released. Since his parents are not here for him to return home, then child protective services should be called to take him into custody." The court also made the finding necessary to enable Christian to petition the United States Citizenship and Immigration Service for classification as a special immigrant juvenile.

The following day, the court heard the matter again to "clarify wardship orders." The court stated, "So the record is clear, . . . wardship is declared on the minor's behalf. The minor is placed on probation." The conditions of probation include that he serve 51 days in custody. After the probation officer informed the court that probation had

---

[1] The Immigration Act of 1990, title 8 United States Code section 1101, sets forth a procedure for classification of certain aliens, including abused, neglected, and abandoned unaccompanied minors, that allows them to become permanent legal residents. Pursuant to 8 Code of Federal Regulations part 204.11(c), an alien is eligible for classification as a special immigrant if the alien: "(1) Is under twenty-one years of age; [¶] (2) Is unmarried; [¶] (3) Has been declared dependent upon a juvenile court located in the United States in accordance with state law governing such declarations of dependency, while the alien was in the United States and under the jurisdiction of the court; [¶] (4) Has been deemed eligible by the juvenile court for long-term foster care; [¶] (5) Continues to be dependent upon the juvenile court and eligible for long-term foster care, such declaration, dependency or eligibility not having been vacated, terminated, or otherwise ended; and [¶] (6) Has been the subject of judicial proceedings or administrative proceedings authorized or recognized by the juvenile court in which it has been determined that it would not be in the alien's best interest to be returned to the country of nationality or last habitual residence of the beneficiary or his or her parent or parents. . . ." Code of Civil Procedure section 155, subdivision (a) authorizes a juvenile court to make the "findings necessary to enable a child to petition the United States Citizenship and Immigration Service for classification as a special immigrant juvenile pursuant to Section 1101(a)(27)(J) of Title 8 of the United States Code."

contacted child protective services and they told him they would not take custody of a 602 ward, the court stated Christian would be ordered to reside with his parents. When Christian's counsel asked for clarification as to whether the court is "defacto releasing him to ICE or is he just being released," the court stated, "He's being released. And I would ask for probation to follow the standard procedures that are followed when a minor is being released from custody and parents are unavailable to pick them up." The court reiterated that the probation department was being ordered "to follow standard procedures with respect to unaccompanied or abandoned minors."

On the same date, Christian filed a timely notice of appeal. While the appeal was pending, the United States Citizenship and Immigration Service granted Christian's petition for special immigrant juvenile status.[2] In response to our request for supplemental briefing, the parties explained that the minor had been released to ICE on May 2 and that he remains in the custody of the Secretary of Health and Human Services.

**Discussion**

1. *The appeal is not moot*.

Although the issue was not initially raised by the parties, our request for supplemental briefing asked the parties whether any proceedings or other developments during the pendency of the appeal have rendered the appeal moot. Respondent argues that the appeal is now moot because the court cannot grant any effective relief. The supplemental brief explains, "This court cannot grant effective relief because appellant is in the custody of federal authorities, is pursuing a federal path to citizenship or residency status, and apparently has been granted SIJ status. It is not even apparent that appellant is still present within California. Thus, it is unclear whether a California juvenile court could still exercise meaningful supervision over appellant. Appellant's original proposed remedy in this case, remand to the juvenile court, may no longer be possible, and is no

---

[2] Christian's request for judicial notice of the order is granted. Christian's request that we take judicial notice of an unrelated appeal pending in appellate case number A142355 is denied.

5

longer useful given appellant's apparent SIJ status. Appellant's appeal from the lower court's dispositional order is therefore moot."

Christian asserts, without explanation, that the appeal is not moot. He maintains that the dispositional order is erroneous and must be reversed and remanded. He acknowledges that because he is now in the custody of the federal government the Health and Human Services agency must consent to jurisdiction before the juvenile court can determine his custody or placement. (8 U.S.C.A. § 1101(a)(27)(J)(iii)(I) ["no juvenile court has jurisdiction to determine the custody status or placement of an alien in the custody of the Secretary of Health and Human Services unless the Secretary of Health and Human Services specifically consents to such jurisdiction."].) He asserts that if the order is reversed and remanded, "Christian's immigration attorney would submit a 'Request for Specific Consent to Juvenile Court Jurisdiction' electronically to the Office of Refugee Resettlement, Division of Unaccompanied Children's Services. A decision takes no more than 30 days. Once consent is obtained, the juvenile court would then be free to render a disposition in Christian's case for custody or placement."[3] (Fn. omitted.) Following submission of his letter brief, Christian filed a request for judicial notice of a letter, written on May 21, 2014, by the Director or the Office of Refugee Resettlement (a branch of the federal Department of Health and Human Services), consenting to the jurisdiction of the California state court to determine custody and placement of Christian.[4]

As it appears that Christian remains in the United States and has been granted relief from deportation, the possibility remains that he may again be back in California. In such a situation, if relief is not granted he would be in violation of the terms of his

---

[3] We note that the federal consent rule does not deprive state courts of all jurisdiction. (*In re Y.M.* (2012) 207 Cal.App.4th 892, 911 ["Although the federal-consent rule prohibits the juvenile court from making any changes to custody or placement decisions without the consent of the federal government, it does not reflect congressional intent to wholly eliminate the state court's jurisdiction to make other types of orders that are in the minor's best interest."].)

[4] Christian's request for judicial notice of the consent letter is granted.

probation, which require him to reside with his mother in Honduras. Therefore the appeal is not moot. (See, e.g., *People v. Puluc–Sique* (2010) 182 Cal.App.4th 894, 900 [defendant's appeal challenging conditions of probation is not moot because the resolution of the appeal "could affect defendant's rights should he return to this country in the future"]; *In re Edwardo V.* (1999) 70 Cal.App.4th 591, 593, fn. 1 [appeal is not moot even though juvenile ward had been deported and lost contact with attorney because conviction would be minor's first strike and could have subsequent effect under the three strikes law].) [5]

2. *The dispositional order must be reversed and remanded.*

Christian contends, among other things, that the court abused its discretion by finding that returning to Honduras would not be in his best interest and at the same time ordering him to reside in his mother's home, which is in Honduras. We agree.

As Christian notes, there was some confusion at the contested disposition hearing regarding the effect of the initial request for an immigration detainer on the court's discretion to select a disposition for the minor. The probation department was under the impression that "[a]ny disposition that involves placing the minor . . . violates federal law." The parties agree that the probation department was incorrect. A juvenile court's compliance with an immigration detainer is discretionary, subject to the limitations found in Government Code section 7282.5 and applicable local ordinances. [6] (*Galarza v.*

---

[5] At oral argument, the Attorney General questioned the relief that might be available for the minor on remand, since the minor apparently is now in Illinois in the hands of federal authorities. However, based on the federal agency's consent to the exercise of jurisdiction by state court, the Attorney General stated he had no objection to remand under the circumstances.

[6] Government Code section 7282.5 provides: "(a) A law enforcement official shall have discretion to cooperate with federal immigration officials by detaining an individual on the basis of an immigration hold after that individual becomes eligible for release from custody only if the continued detention of the individual on the basis of the immigration hold would not violate any federal, state, or local law, or any local policy, and only under [enumerated] circumstances. [¶] . . . [¶] (b) If none of the conditions listed in subdivision (a) is satisfied, an individual shall not be detained on the basis of an immigration hold after the individual becomes eligible for release from custody." San Francisco

7

*Szalczyk* (3rd. Cir. 2014) 745 F.3d 634, 639-646; Gov. Code, § 7282.) Federal law does not restrict the court's discretion in selecting an appropriate disposition for the minor.

The court's discretion in selecting an appropriate disposition for a ward is governed by Welfare and Institutions Code section 202, subdivision (b), which provides, "Minors under the jurisdiction of the juvenile court as a consequence of delinquent conduct shall, in conformity with the interests of public safety and protection, receive care, treatment, and guidance that is consistent with their best interest, that holds them accountable for their behavior, and that is appropriate for their circumstances. This guidance may include punishment that is consistent with the rehabilitative objectives of this chapter. . . ." Furthermore, "Under section 202, juvenile proceedings are primarily 'rehabilitative' [citation], and punishment in the form of 'retribution' is disallowed [citation]. Within these bounds, the court has broad discretion to choose probation and/or various forms of custodial confinement in order to hold juveniles accountable for their behavior, and to protect the public." (*In re Eddie M*. (2003) 31 Cal.4th 480, 507.)

Under section 738 a court is authorized to order a nonresident juvenile offender returned to his or her parents who reside in a foreign country if it determines that such a placement is in the best interest of the minor.[7] In *In re Manuel P*. (1989) 215 Cal.App.3d

---

Administrative Code section 12I.3 provides in relevant part "(a) Except as provided in subsection (b), a law enforcement official shall not detain an individual on the basis of a civil immigration detainer after that individual becomes eligible for release from custody. [¶] (b) Law enforcement officials may continue to detain an individual in response to a civil immigration detainer for up to forty-eight (48) hours after that individual becomes eligible for release if the individual meets [enumerated] criteria." While the parties dispute whether Christian's adjudication qualifies as one of the enumerated conditions under the Government Code, we need not resolve that dispute because the record establishes that Christian was not detained beyond the date on which he was eligible for release.

[7] Welfare and Institutions Code section 738, provides in relevant part, "In a case where the residence . . . of a ward of the juvenile court is out of the state and in another state or foreign country, or in a case where such minor is a resident of this state but his parents, relatives, guardian, or person charged with his custody is in another state, the court may order such minor sent to his parents, relatives, or guardian, or to the person charged with his custody, or, if the minor is a resident of a foreign country, to an official of a juvenile

48, 63 the court interpreted section 738 "as allowing courts to order such minors released to federal immigration authorities for deportation by the federal government." (See also *In re Jose C*. (2009) 45 Cal.4th 534, 549, fn. 9, citing *In re Manuel P.* approvingly for the proposition that "state juvenile courts may determine a party's immigration status in the course of wardship proceedings"].) This is, in essence, what the court did in this case.

While authorized by statute, the court's dispositional order was nonetheless an abuse of discretion in this case. The court may have proceeded under the erroneous premise that it was compelled to transfer custody of the minor to the federal authorities as they had requested. In all events, in granting Christian's motion for findings in support of his SIJ petition, the court expressly determined that it was not in Christian's best interests to return to Honduras. The court found further that Christian had been "abandoned by his biological father who has never provided financial assistance or support" and that his mother "is unable to provide for his financial support." Having so found, the court could not also make the required finding under section 202 that ordering Christian to live with his mother in Honduras would be in his best interest. These directly conflicting findings cannot be reconciled. Accordingly, the dispositional order must be reversed.

On remand, the court is directed to select a disposition that serves the purposes of the juvenile court law.

---

court of such foreign country or an agency of such country authorized to accept the minor, and in such case may order transportation and accommodation furnished, with or without an attendant, as the court deems necessary. If the court deems an attendant necessary, the court may order the probation officer or other suitable person to serve as such attendant."

## Disposition

The dispositional order is reversed and remanded.

_____

Pollak, J.

We concur:

_____

McGuiness, P. J.

_____

Siggins, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re CHRISTIAN H., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, <br><br>     Plaintiff and Respondent, <br><br> v. <br><br> CHRISTIAN H., <br><br>     Defendant and Appellant. | A141758 <br><br> (City & County of San Francisco Super. Ct. No. JW14-6068) <br><br> ORDER CERTIFYING OPINION FOR PUBLICATION |

THE COURT:

    The opinion in the above-entitled matter filed on June 29, 2015, was not certified for publication in the Official Reports.  For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

Date: _____      _____ Acting P.J.

1

| | |
|---|---|
| Trial court: | City & County of San Francisco |
| Trial judge: | Honorable Suzanne Bolanos |
| Counsel for Plaintiff and Respondent: | Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Senior Assistant Attorney General, Eric D. Share, Supervising Deputy Attorney General, and Joan Killeen, Deputy Attorney General. |
| | MORGAN, LEWIS & BOCKIUS LLP, Frank B. Kennamer, Nitin Jindal, Zachary S. Hill, Phillip Wiese, and Megan Lin for Youth Law Center and Public Counsel Law Center as amicus curiae on behalf of plaintiff and respondent. |
| Counsel for Defendant and Appellant: | L. Richard Braucher under appointment by the Court of Appeal. |